UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| F. JONATHAN ZUSY, Plaintiff, | ) | |
| v. | ) | CASE NO. 1:05-cv-1455-DFH-TAB |
| INTERNATIONAL MEDICAL GROUP, INC., Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

As plaintiff F. Jonathan Zusy neared the end of his initial term of employment as general counsel for defendant International Medical Group, Inc. (IMG), he fulfilled one of his long-held goals by moving from Indianapolis, Indiana to Durango, Colorado. His job, contrary to his expectations, did not make the trip.

Zusy claims that IMG president Joseph Brougher breached Zusy's orally modified employment contract by terminating him after he moved to Colorado. Invoking this court's diversity jurisdiction, Zusy has sued for (1) wrongful termination and breach of his employment contract; (2) promissory estoppel; (3) constructive fraud; and (4) wrongful repudiation of the contract. IMG has moved for summary judgment. The undisputed facts show that the alleged oral modification is not enforceable and that Brougher and IMG owed Zusy no

fiduciary duty in the course of their dealings. IMG is entitled to summary judgment on all claims.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving parties entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving parties must show there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255.

*Facts for Summary Judgment*

I. *Zusy's Employment and Plans to Move to Colorado*

In light of the applicable standard for summary judgment, the court treats the following facts as true for purposes of IMG's motion. Plaintiff F. Jonathan Zusy is an attorney who has been a citizen of Colorado since June 2005. Prior to moving to Colorado, Zusy spent decades working in Indianapolis, Indiana. In the late 1990s, Zusy practiced law with the Indianapolis firm of Ancel & Dunlap. As part of Zusy's practice, he served as outside counsel to IMG, an Indiana corporation that maintains its principal place of business in Indiana. IMG is in the business of developing, marketing, placing, and administering various international medical, health and travel insurance products and services.

In 1999, Joseph Brougher, IMG's president, CEO, and board member, approached Zusy and asked if he would come to work for IMG. Zusy Dep. 22. By July 1999, Zusy and IMG entered into a written contract for Zusy's employment. Zusy drafted the contract. *Id.* at 24. He agreed to serve as IMG's general counsel, vice president, and secretary for "a period of approximately five (5) years, beginning effective July 19, 1999, and ending June 30, 2004." Zusy Dep. Ex. 6.

During the course of these initial negotiations, Zusy mentioned his intention to move eventually to Colorado. Zusy Dep. at 33. This reflected a long-standing desire on his part. In the early 1970s, Zusy attended the University of Colorado

and worked in the state for several years before relocating to California to attend law school. After graduating from law school, he moved to Indiana to begin practicing, but always intended to make his way back to Colorado. In 1997, Zusy bought land in Pagosa Springs, Colorado. In 2003, Zusy took further steps to fulfill his ambition when he purchased two parcels of land in Montezuma County, Colorado. Zusy Dep. 12. Zusy intended to make one of these the site of his future home. Even before working for IMG, Zusy already envisioned moving to Colorado around April 2005 – around the time his wife's son would graduate from high school. Zusy Dep. 34; Zusy Aff. ¶ 23.

II. *Second Employment Contract*

While working under the terms of his original employment contract, Zusy approached Brougher about amending this contract to reflect his intention to move eventually to Colorado, among other things. The terms of the original employment contract extended through June 30, 2004, but Zusy and IMG signed a new employment contract superseding and replacing the prior contract, effective January 1, 2003. Section III of this new contract is at the heart of the current dispute:

> This Agreement will be effective as of the 1st day of January, 2003, and will remain in effect for approximately two and one-half (2 1/2) years thereafter until the end of the Initial Term, subject to the termination and extension provisions hereof. The parties agree this Agreement will be automatically extended, without the need for any written notice, acknowledgment, acceptance, or other affirmative action by the parties, for additional one-year terms ("Extended Term[s]") after the Initial Term, unless either party hereto affirmatively terminates this Agreement in writing no less than sixty

> (60) days prior to the end of the Initial Term or any Extended Term; provided, however, that Employer may so terminate on thirty (30) days notice with respect to the Initial Term. An election to terminate solely in accordance with the foregoing, and not as a result of any of the circumstances described in Sections VIII(A)(1) or (2), below, will constitute a termination "without cause" under Section VIII(B), below, and will be subject to the provisions thereof. The parties contemplate that Employee will move to Durango, Colorado, in or about April of 2005, and that the parties thereafter will attempt to maintain the employment relationship under this Agreement through a "virtual office" arrangement, subject to the termination provisions hereof.

Zusy Employment Contract, § III. Section VIII(B) provided that "if Employer elects to terminate this Agreement without cause pursuant to Section III as of the end of the Initial Term or any Extended Term, Employee will be entitled to receive and will be paid a severance payment by Employer, in cash, as of the effective date of termination, in the amount of $100,000." If IMG chose to terminate the employment contract without cause at any other time, Zusy was entitled to a severance payment of three times his annual salary. *Id.* In 2005, Zusy was compensated at an annual salary rate of $250,000. § V(A)(3). The parties also agreed: "This Agreement may not be amended, modified or supplemented except in writing, duly signed by both parties hereto." § X(G).

Zusy continued working for IMG under the terms of this new contract. At the same time, he laid more groundwork for his planned move to Colorado. In February 2003, he purchased 70 acres of real estate near Durango, Colorado. Zusy Aff. ¶ 26. In August 2004, he signed a contract giving a Colorado architect permission to proceed with a preliminary design of his future home. *Id.*, ¶ 28(i).

In October 2004, he listed his Indianapolis home for sale with a real estate broker. *Id.*, ¶ 28(iv).

III. *Oral Modification*

Between August 2004 and March 2005, Zusy has testified that he and Brougher had a series of conversations about Zusy's employment with IMG. Zusy told Brougher that his plans for moving back to Colorado were progressing and that he anticipated moving in late-spring or early-summer 2005. IMG did not have any offices in Colorado. Zusy claims the two sides expressed their continued interest in having Zusy continue working for IMG through a "virtual office" in Zusy's Colorado home. Most important, Zusy alleges that he and Brougher orally modified his employment contract "by specifically agreeing and promising one another that neither IMG nor [Zusy] would invoke or exercise the pre-Initial Term termination clauses of the Contract." Zusy Aff. ¶ 27. The effect of such a modification would be to allow the automatic one-year extension clause in Section III to take effect once the initial term lapsed without a termination notice. *Id.*

In the following months, Zusy confirmed his oral modification with Brougher on a number of occasions. At IMG's Christmas party in December 2004, Zusy and Brougher discussed the move and confirmed the oral modification. Zusy Aff. ¶ 28(v). Before Zusy accepted an offer on his Indianapolis home in March 2005, he again confirmed with Brougher that a deal was in place. Zusy Dep. 43-44; Zusy Aff. ¶ 28(vii). In June 2005, Zusy met again with Brougher to discuss issues

relating to his employment while in Colorado. Zusy Aff. ¶ 29. At no point during the course of these meetings did the parties ever reduce their oral modification to writing. Nor did Zusy keep notes, journals, or records to document these conversations. *Id.*

Zusy and Brougher sent each other at least one e-mail during this period touching on Zusy's relocation. Zusy had been complaining about the size and layout of his Indianapolis office. Responding to Zusy's concerns, Brougher wrote in October 2004: "You have made it known that you are leaving for Colorado in April. There is absolutely no reason to reconfigure the space. . . . Instead of being down and upset about having the largest office of any VP, I suggest that you think about it. 1. You have an employer that is willing to try to help you fulfill your desire to move to Colorado. 2. You have the largest office of any VP in the Company. If those two things do not satisfy you, then I am sorry, nothing will." Zusy Dep. Ex. 16.

While IMG does not dispute that Zusy expressed his desire to move to Colorado, it denies that Brougher ever agreed to an oral modification of the employment agreement. For purposes of summary judgment, however, the court must accept Zusy's version on this disputed fact.

IV. *IMG Exercises Termination Rights*

Zusy closed on the sale of his Indianapolis home and moved to Colorado at the end of May 2005. At some point in either May or June 2005, Brougher conferred with some of IMG's other senior officers and decided that it was in the best interests of IMG to have its general counsel located in Indianapolis. IMG also claims that Brougher wanted to hire a general counsel with more experience and expertise in corporate and insurance regulation.

Whatever Brougher's reasoning, on June 25, 2005 he sent Zusy written notice of his decision to terminate the employment contract at the end of the initial term. Brougher's notice complied with the written terms of Section III of Zusy's employment contract and served to terminate Zusy's employment as of July 31, 2005. Under the written terms, Zusy was entitled to a $100,000 cash severance payment. § VIII(B)(1).

After that notice, Brougher and Zusy exchanged a series of communications between June and July 2005. Zusy proposed a "2-year extension to [his employment] agreement, with change of title to Deputy General Counsel and/or Chief Litigation Counsel, and at the current pay scale and benefits." Zusy Dep. Ex. 10. Brougher made a counter-proposal in which the employment contract would still terminate on July 31, 2005, Zusy would still receive his $100,000 severance payment, and IMG would pay him at his (then) salary for one more month of work. Zusy Dep. Ex. 14. Zusy rejected this offer on July 15, 2005, and

instead announced his resignation from "all offices and directorships at all IMG's subsidiary companies effective immediately, and I hereby resign from all offices and directorships at all IMG effective July 31, 2005." *Id.* Brougher accepted Zusy's resignation and paid him his salary through July 31, 2005, in addition to the $100,000 severance payment. Zusy Dep. 111-14. Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

## *Discussion*

After Zusy received notice that his employment would not be extended past its initial term, he filed this suit against IMG alleging: (1) wrongful termination and breach of contract; (2) promissory estoppel arising from the mutual oral promise; (3) constructive fraud and breach of fiduciary duty; and (4) wrongful repudiation of the contract.

### I. *Wrongful Termination and Breach of Contract*

Zusy's wrongful termination and breach of contract claims flow from the alleged oral modification to the contract that took place between plaintiff and Brougher in August 2004 and was allegedly reaffirmed on several occasions in the months that followed. This oral modification concerned the parties' rights under the following rollover provision in Section III of the employment contract:

> The parties agree this Agreement will be automatically extended, without the need for any written notice, acknowledgment, acceptance, or other affirmative action by the parties, for additional one-year terms ("Extended

> Term[s]") after the Initial Term, unless either party hereto affirmatively terminates this Agreement in writing no less than sixty (60) days prior to the end of the Initial Term or any Extended Term; provided, however, that Employer may so terminate on thirty (30) days notice with respect to the Initial Term.

Zusy's theory is that when he orally agreed with Brougher that the two parties would not exercise their respective termination rights under Section III of the employment contract, they successfully modified the written terms of that section. This meant that an automatic term extension of one-year (originally subject to the timely exercise of termination rights by either Zusy or IMG) would vest and Zusy was therefore contractually entitled to one more year of employment with IMG from August 2005 through July 2006, during his first year back in Colorado.

Zusy claims that IMG breached this orally modified agreement as Zusy's initial employment term came to an end. It is undisputed that in June 2005, Brougher sent Zusy a termination notice that met the written requirements of Section III. This notice would, however, be in direct contravention of the oral agreement as described by Zusy in his testimony.

IMG offers three arguments against Zusy's claim. First, IMG argues that no reasonable jury could conclude that Brougher actually agreed to an oral modification. Second, IMG argues that the oral modification still fails due to lack of consideration. Third, IMG argues that the oral modification is barred by the Statute of Frauds. Zusy has come forward with sufficient evidence to create a genuine issue of material fact as to whether the two sides entered into such an

arrangement. Even taking this evidence in the light most favorable to Zusy, the alleged arrangement was not supported by consideration and the alleged modification is unenforceable under the Statute of Frauds.

A. *Evidence of an Oral Modification*

Both parties recognize that the clause in Zusy's employment contract requiring any modification to be in writing does not foreclose the possibility of a valid oral modification under Indiana common law. *E.g.*, *Sees v. Bank One, Indiana, N.A.*, 839 N.E.2d 154, 161 (Ind. 2005); *TRW, Inc. v. Fox Development Corp.*, 604 N.E.2d 626, 630 (Ind. App. 1992); *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 220-21 (Ind. App. 1987); cf. *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1285-86 (7th Cir. 1986) (distinguishing between common law and more specific provisions of Uniform Commercial Code). Because a subsequent modification is a contract in its own right, however, it requires all the requisite elements of a contract. *TRW*, 604 N.E.2d at 630-31. This includes "an offer and an acceptance of the offer which meets the terms of the offer in every respect." *Keating v. Burton*, 617 N.E.2d 588, 592 (Ind. App. 1993). The oral modification must also be supported by consideration in its own right. *Buschman v. ADS Corp.*, 782 N.E.2d 423, 430 (Ind. App. 2003).

IMG argues that Zusy has not come forward with enough evidence to create a genuine issue of material fact as to whether an offer was ever made to modify the written employment agreement. Zusy's deposition, subsequent errata sheet,

and affidavit all describe the oral agreement in question.[1] Zusy testified in his deposition that before moving to Colorado, he made sure that an agreement was in place allowing him to continue his employment with IMG.

> I remember specifically when an offer came in on my house on Sergeant (sic) Road, before I signed it I went to Joe [Brougher] and said, "I'm getting ready to sell. I got an offer. I'm getting ready to sell my house. We've got a deal, right? You are going to let me go to Colorado and live out there and continue to work for IMG for at least a year, correct?" "Yes," [Brougher] said, "Correct. We're going to give it a shot. Sell you're house, John. Sign the thing."

Zusy Dep. 44. Zusy also testified:

> Joe [Brougher] and I agreed that I was going to get one year in Colorado to see how it was going to work. He and I agreed several times that the automatic extension provision of the contract – extending the contract for another year after the move would be – would be agreed to.

---

[1]IMG has also moved to strike Zusy's deposition errata sheet and affidavit. This motion is denied. In submitting an errata sheet, Zusy timely exercised his rights under Rule 30(e) of the Federal Rules of Civil Procedure, which allows a deponent thirty days to review the transcript of his deposition and to make any changes as to "form or substance." The deponent may exercise this privilege by signing a statement reciting the changes and his reasons for making them. If the deponent exercises this right properly, both the original answers and the revised answers and the accompanying explanations become part of the record. See *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997); *Lustig v. Thomas*, 89 F.R.D. 639, 641-42 (N.D. Ill.1981); accord, *Bullocks-Banks v. Indiana American Water Co.*, 2005 WL 1126839, at *4 (S.D. Ind. May 12, 2005). IMG suggests Zusy is attempting to create a sham issue of fact through his subsequent affidavit. The Seventh Circuit has often held that "a party cannot create a sham issue of fact by 'directly contradict[ing] her own earlier statements, without explaining the contradiction or attempting to resolve the disparity.'" *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1314 n.3 (7th Cir. 1989), quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985). This standard is not met by Zusy's affidavit. While the affidavit enlarges upon and clarifies his earlier deposition testimony (thereby raising potential credibility issues), it does not directly contradict his deposition.

Zusy Dep. at 43. In the errata sheet submitted subsequent to his deposition, Zusy clarified this deposition testimony:

> "would be" – would be allowed to take effect on its own, and [Brougher] agreed that he would not invoke IMG's termination rights until I had been in Colorado for at least one full year. We both agreed to modify the contract in those regards.

Zusy Dep. Errata Sheet. In his affidavit filed in response to IMG's motion for summary judgment, Zusy gave his most comprehensive description of the alleged oral modification:

> In or about the late summer of 2004, December of 2004, and March of 2005, and at various times in between such dates and subsequent thereto, Brougher and I agreed to orally modify the Contract. We subsequently ratified and confirmed such modification during several face-to-face conversations that we had, by specifically agreeing and promising one another that neither IMG nor I would invoke or exercise the pre-Initial Term termination clauses of the Contract, and we both mutually acknowledged and agreed that we would allow the automatic one-year extension clause to take effect upon the expiration of the Initial Term.

Zusy Aff. ¶ 27.

IMG observes that during Zusy's deposition, he was unable to recall with specificity when or where the oral modification was reached. Zusy could not identify any other witnesses to the oral modification beyond Brougher and himself. Nor has Zusy produced any documentation that conclusively establishes that the alleged oral agreement took place.[2] While the absence of detail may cast doubt on

---

[2]Zusy relies on an October 2004 e-mail from Brougher stating that he was (continued...)

the credibility of Zusy's assertions, he has nevertheless come forward with enough specific evidence to avoid summary judgment on this issue.

B. *Consideration for the Oral Modification*

IMG argues that the alleged oral modification between Zusy and Brougher should fail for lack of consideration, which is required for such a modification. See *Hamlin v. Steward*, 622 N.E.2d 535, 539 (Ind. App. 1993) ("A written agreement may be changed by a subsequent one orally made, upon a sufficient consideration"). Consideration can come in the form of a simple promise. See *Gorbett v. Estelle*, 438 N.E.2d 766, 768 (Ind. App. 1982) ("It hardly need be said that a promise is a valuable consideration in contract law"), citing *Prell v. Trustees of Baird and Warner Mortgage and Realty Investors*, 386 N.E.2d 1221 (Ind. App. 1979).

While a simple promise can constitute consideration, this promise cannot be illusory in nature. "An illusory promise, one which by its terms makes performance entirely optional with the promisor, cannot form the basis for a valid contract, because a contract is unenforceable if it fails to obligate [one party] to do anything." *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 759 (7th Cir. 2001) (interpreting Indiana law on contracts) (internal quotations omitted).

---

[2](...continued)
"an employer that is willing to try to help you fulfill your desire to move to Colorado." Zusy Dep. Ex. 16. This message is not at all conclusive but is at least consistent with Zusy's version of the facts.

"To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee." *A & S Corp. v. Midwest Commerce Banking Co.*, 525 N.E.2d 1290, 1292 (Ind. App. 1988). IMG points out that Section VIII(B) of Zusy's employment contract allowed him to terminate his employment at any time with sixty days' written notice.

> B. Termination Without Cause. Either Employer or Employee may terminate this Agreement without cause upon giving sixty (60) days' prior written notice to the other party.
>
> . . . .
>
> 2. Termination by Employee. In the event that Employee terminates this Agreement without cause, Employee: (a) will be paid and/or provided the compensation, remuneration, and other benefits as provided in Sections V and VI hereof through the effective date of termination and, (b) at the option of Employer, will continue to render services hereunder through said effective date.
>
> Additionally, if this Agreement is terminated without cause by Employee, Employee will be entitled to receive and will be paid a severance payment by Employer, in cash, as of the effective date of termination, in the amount of $100,000.

Even if Zusy orally agreed not to terminate his contract prior to the end of the Initial Term, Section VIII(B) would have still allowed him to terminate with sixty days notice, without any additional loss of benefits. Under the language of Section VIII(B), Zusy was never under any additional obligation to remain with IMG at the end of the Initial Term even if he did not exercise his Section III termination rights. He could leave on 60 days notice at any time (with a $100,000 severance payment, to boot). Zusy's alleged promise therefore did not confer any benefit on IMG or constitute a detriment to himself. Because the promise was illusory, it did not

amount to proper consideration that could support enforcement of the alleged oral modification.

C. *Statute of Frauds*

Even if Zusy's promise had provided proper consideration, he cannot maintain his wrongful termination and breach of contract claim is because the contract, as orally modified, runs afoul of the Statute of Frauds. Under the applicable Statute of Frauds, a party may not bring an action based on an unwritten, unsigned agreement when that agreement "is not to be performed within one (1) year from the making of the agreement." Ind. Code § 32-21-1-1(b)(5).

Zusy observes that the oral agreement, standing alone, would not have to be in writing in order to satisfy the Statute of Frauds. Zusy and Brougher allegedly entered into the oral agreement on or about August 23, 2004. Both parties agreed that neither would exercise their termination rights under the employment contract. For IMG, these termination rights expired on July 1, 2005 – approximately ten months after the parties entered into the oral agreement. For Zusy, these termination rights expired on June 1, 2005 – approximately nine months subsequent to the oral agreement. Zusy argues that the terms of the oral agreement alleged by Zusy fall well within the one-year Statute of Frauds time limit. Zusy contends that because the terms of the oral agreement, taken in

isolation, did not run afoul of the Statute of Frauds, that agreement should therefore be treated as enforceable.

Zusy's position has some support in other states. See, *e.g.*, *Fairview Radiology, P.C. v. Defiance Hosp., Inc.*, 413 F. Supp. 2d 874, 881 (N.D. Ohio 2005) (parties orally modified a written contract that fell within the Statute of Frauds; the modification fell outside the Statute of Frauds because its particular terms could have been completed within a year); *Puma v. Sullivan*, 746 A.2d 871, 874 n.3 (D.C. 2000) (noting in *dictum* that the Statute of Frauds is not applicable to oral modifications that are capable of being performed within one year). The relevant question, however, is how Indiana courts would approach such an issue. As a court exercising diversity jurisdiction, the court must apply the law of Indiana and predict how the Indiana Supreme Court would resolve the issue. *Equitable Life Assurance Soc. of U.S. v. Bell*, 27 F.3d 1274, 1277 (7th Cir. 1994). Under Indiana law, the terms of an oral modification to a contract cannot be read in isolation for purposes of the Statute of Frauds. Rather, the court must consider the terms of the original written agreement, as modified. The Restatement (Second) of Contracts phrases the rule in the following manner:

> For the purpose of determining whether the Statute of Frauds applies to a contract modifying but not rescinding a prior contract, the second contract is treated as containing the originally agreed terms as modified. The Statute may, however, apply independently of the original terms to a contract to modify a transfer of property.

Restatement (Second) of Contracts § 149(1). Consistent with this rule, Indiana courts have held that when "a contract affected by the statute of frauds has been put in writing, and afterwards orally modified, such modified agreement is also within the statute." *Ward v. Potts*, 91 N.E.2d 643, 645 (Ind. 1950) (affirming dismissal of claim for breach of orally modified contract subject to statute), citing *Nagdeman v. Cawley*, 162 N.E. 68, 71 (Ind. App. 1928) (a contract required by the Statute of Frauds to be in writing cannot be modified or changed by a contract in parol); see also *Soto v. Buchanon*, 2007 WL 3756, at *3-4 (N.C. App., Jan. 2, 2007) (while orally modified terms of a lease ran only for a period of several weeks, the Statute of Frauds applied because the written lease exceeded three years and was itself subject to the Statute of Frauds); *American Garment Properties, Inc. v. CB Richard Ellis-El Paso, L.L.C.*, 155 S.W.3d 431, 437 (Tex. App. 2004) (barring oral modifications to a contract within the Statute of Frauds when those oral modifications "would materially alter the parties' written agreement"); *Rex Lumbar Co. v. Acton Block Co.*, 562 N.E.2d 845, 848 (Mass. App. 1990) (stating the general rule that "amendments to a contract that is within the Statute of Frauds are themselves within the Statute of Frauds").

The Statute of Frauds thus bars enforcement of the subsequent oral agreement between Zusy and IMG. Upon modification, the agreement between Zusy and IMG remained within the Statute of Frauds. The contract originally called for a term of employment of more than two years. The effect of both sides forfeiting their respective termination rights would have been to extend Zusy's

term of employment for an additional year. The Statute of Frauds would bar enforcement of such a contract in the absence of a signed writing from IMG. Because Zusy and IMG's subsequent oral agreement must be read as incorporating the terms of the original written agreement (as modified), the fact that this modified agreement was not signed or in writing therefore renders it unenforceable under Indiana law.[3]

II. *Promissory Estoppel*

Zusy does not have a claim for breach of his orally modified employment contract, but it remains at least theoretically possible for him to secure relief on a theory of promissory estoppel. Promissory estoppel would offer only more limited reliance damages rather than the benefit of the alleged (but unenforceable) bargain. *Jarboe v. Landmark Community Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 122 (Ind. 1994), citing with approval *D&G Stout, Inc. v. Bacardi Imports, Inc.*, 923 F.2d 566, 569 (7th Cir. 1991). Indiana law requires five elements to gain

[3]Plaintiff's brief in opposition to summary judgment raises an additional theory of breach. Zusy argues that IMG materially breached the employment contract by cutting off his access to IMG's computer system after he tendered his resignation letter on July 18, 2005. See Zusy Dep. Ex. 14. Zusy claims IMG's actions made it impossible to perform his work duties through July 31, 2005, the date Zusy stated that his resignation would become effective. A reasonable jury could not conclude that IMG materially breached the employment contract by restricting Zusy's system access after he declared that he was leaving IMG. IMG continued to pay Zusy his full salary through July 31, 2005. Zusy himself acknowledged being on vacation through this period, and he has failed to point to any duties he was kept from performing or any injury he suffered as a result of the claimed breach. Section VIII(B)(2) of the employment contract gave IMG the option of having Zusy continue rendering his services once he terminated the contract without cause. Zusy's additional theory of breach therefore fails.

relief on a claim for promissory estoppel: (1) a promise; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcing the promise. *Truck City of Gary, Inc. v. Schneider Nat. Leasing*, 814 N.E.2d 273, 279 (Ind. App. 2004), citing *Weinig v. Weinig*, 674 N.E.2d 991, 997 (Ind. App. 1996).

The added wrinkle of Zusy's promissory estoppel claim is the fact that the oral promise he seeks to enforce runs afoul of the Statute of Frauds. Indiana courts have held that enforcement of a promise otherwise unenforceable because of the Statute of Frauds is permissible to avoid injustice only when "the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss." *Whiteco Industries, Inc. v. Kopani*, 514 N.E.2d 840, 845 (Ind. App. 1987), quoting *Starkey v. Galloway*, 84 N.E.2d 731, 734 (Ind. App. 1949). Put another way, "neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds." *Whiteco Industries*, 514 N.E.2d at 845.

Without such a showing, the party seeking enforcement on estoppel grounds cannot avoid the consequences of the Statute of Frauds.[4]

IMG argues that Zusy's promissory estoppel claim fails because: (a) there is no genuine issue of fact as to whether Brougher ever made Zusy an oral promise regarding IMG's exercise of its termination rights; (b) even if Brougher had made such a promise, it could not have induced reasonable reliance on the part of Zusy; and that (c) Zusy did not suffer unjust and unconscionable injury and loss.

IMG's first argument fails because, as discussed above, there is a genuine issue of material fact as to whether Brougher promised that IMG would not invoke its pre-termination rights under Section III of the employment contract.

IMG's second argument is that Zusy could not have reasonably relied on Brougher's alleged promise in light of language in Section X of the contract: "This

---

[4]The court in *Whiteco Industries* gave a straightforward and prudent explanation for why Indiana courts have adopted this heightened requirement for promissory estoppel claims implicating the Statute of Frauds:

> Were this not the rule the statute would be rendered virtually meaningless because the frustrated claimant would always assert an oral promise/agreement to defeat by means of estoppel the statute's requirement for a written one. The contest would then concern the credibility of the evidence of an oral promise or agreement. That, of course, is precisely what the statute seeks to avoid.

514 N.E.2d at 844.

Agreement may not be amended, modified, or supplemented except in writing, duly signed by both parties hereto." IMG cites no directly applicable authority for this proposition. Nor is IMG's argument persuasive in light of the fact that Indiana law does not construe such clauses strictly, as noted above. Zusy has even stated that he was aware of that point of law when negotiating with IMG, a plausible assertion given his decades-long practice in Indiana.

Nevertheless, IMG is entitled to summary judgment on Zusy's promissory estoppel claim because Zusy cannot establish that he suffered injury and losses that are unjust and unconscionable as the terms have been defined by Indiana courts. Under similar circumstances, Indiana courts have held that injuries and losses of the kind suffered by Zusy do not rise to the level necessary for promissory estoppel to save an oral promise from the Statute of Frauds.

Indiana case law has yet to address directly a case such as this, where an employee's current employer promises what amounts to continued employment for one year, a promise which the employee then relies upon to the extent that he moves to another state and leaves behind his previous home. The Indiana Supreme Court has decided a case involving the same kinds of injury alleged by Zusy. In *Brown v. Branch*, 758 N.E.2d 48 (Ind. 2001), the appellant-defendant (Brown) reneged on an oral promise to convey a house in Indiana to his appellee-plaintiff girlfriend (Branch). Anticipating that a house was waiting for her, Branch abandoned her previous job, dropped out of college, and relocated to Indiana from

Missouri. *Id.* at 53. The trial court awarded the house to Branch under a theory of promissory estoppel. The Indiana Supreme Court reversed, holding as a matter of law that the kinds of injuries and losses suffered by Branch could not be considered unjust and unconscionable, and therefore could not save the oral promise from the Statute of Frauds. *Id.*

In this case, the court must assume that Brougher promised Zusy that if he moved to Colorado, IMG was still committed to providing what amounted to a one-year term of employment. Relying on Brougher's assurances, Zusy went ahead with a plan to move to Colorado, just as Branch moved from her out-of-state home to come to Indiana. Making this case less compelling than the circumstances in *Branch* is that while the specifics of Zusy's move were perhaps influenced by Brougher's assurances of job security, the general parameters existed in Zusy's mind long before he even began working for IMG in 1999. Fulfilling his personal ambition to move back to Colorado, Zusy discovered that the one-year term he says he had been promised was – like the house in *Brown* – not forthcoming. Zusy instead received a $100,000 severance package. Because Zusy cannot show that the injury and loss he allegedly suffered were unconscionable and unjust, the Statute of Frauds bars his promissory estoppel claim as well.

III. *Constructive Fraud and Breach of Fiduciary Duty*

Like promissory estoppel, constructive fraud is an equitable doctrine that can, in theory, provide a basis for avoiding the Statute of Frauds. *Ohio Valley*

*Plastics, Inc. v. National City Bank*, 687 N.E.2d 260, 263 (Ind. App. 1997) ("equity will not permit the Statute of Frauds to be used to perpetrate fraud"). Zusy claims that Brougher's oral promise that IMG would not exercise its Section III termination rights and that Zusy would therefore have an additional one-year term of employment amounted to constructive fraud. The law of constructive fraud is designed "to protect the weak and credulous from the wiles and stratagems of the artful and cunning, as well as those whose vigilance and sagacity enable them to protect themselves." *Plymale v. Upright*, 419 N.E.2d 756, 762 (Ind. App. 1981), quoting *McKee v. State*, 12 N.E. 510, 511 (Ind. 1887).

To achieve this purpose, Indiana courts apply a two-step process. Zusy has the initial burden of (1) proving defendant owed him a fiduciary duty,[5] and (2) that defendant gained an advantage over him. *Morfin v. Estate of Martinez*, 831 N.E.2d 791, 802 (Ind. App. 2005); *Strong v. Jackson*, 777 N.E.2d 1141, 1147 (Ind. App. 2002). If plaintiff can meet this initial burden, a presumption of fraud attaches and the defendant must show that he made no deceptive material misrepresentations of past or existing facts or did not remain silent when a duty to speak existed, or that the complaining party did not rely on any such misrepresentation or silence, or that no injury proximately resulted from the misrepresentation or silence. *Morfin*, 831 N.E.2d at 802.

---

[5]While the duty at issue in a constructive fraud case is typically fiduciary in nature, courts have also recognized a duty "where there is a buyer and a seller, where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Porter County Development Corp. v. Citibank (South Dakota), N.A.*, 855 N.E.2d 306, 311 (Ind. App. 2006).

Zusy's constructive fraud claim fails at the initial step. He cannot show that IMG or Brougher owed him a fiduciary duty. For a fiduciary relationship to exist, there must be confidence by one party in another, and the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of knowledge. *Crowe, Chizek, and Co., LLP v. Oil Tech., Inc.*, 771 N.E.2d 1203, 1210 (Ind. App. 2002). "The dominant party's wrongful abuse of this confidence for its own gain breaches the relationship." *Heaton & Eadie Professional Services Corp. v. Corneal Consultants of Indiana, P.C.*, 841 N.E.2d 1181, 1189 (Ind. App. 2006). Examples of common relationships where Indiana courts have recognized the potential for a fiduciary duty include "relations of attorney and client, principal and agent, husband and wife, and parent and child." *Sanders v. Townsend*, 582 N.E.2d 355, 358 (Ind. 1991). In light of the reference to attorney-client relationships, it is worth noting that the attorney (like Zusy) owed a fiduciary duty to the client (IMG), not the other way around.

Zusy argues that corporate officers, like Brougher and himself, should also be recognized as fiduciaries to one another. The Indiana Supreme Court has written that a corporate officer "must deal fairly, honestly, and openly with his corporation and fellow stockholders." *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 240 (Ind. 2001), quoting *Hartung v. Architects Hartung/Odle/Burke, Inc.*, 301 N.E.2d 240, 243 (Ind. App. 1973). Plaintiff cites no authority, however, indicating that Brougher's fiduciary responsibilities extended to other *non-shareholding* officers such as Zusy. See *Needham v. Innerpac, Inc.*, 2006 WL

2710617, at *14 (N.D. Ind. Sept. 19, 2006) ("the mere breach of an employment contract is insufficient to give rise to a claim of constructive fraud"), citing *Gross v. University of Chicago*, 302 N.E.2d 444, 453-54 (Ill. App. 1973) (employer/employee relationship does not create a fiduciary duty on the part of the employer).

Moreover, while officers and directors owe fiduciary duty to corporation as well as corporate stockholders, this is so only regarding matters that affect the general well-being of a corporation. *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1318 (Ind. App. 1993). In *Biberstine*, a former vice president and shareholder of the defendant corporation claimed that the corporate directors breached their fiduciary duty to him when they terminated his employment, among other things. The court recognized that officers and directors generally owe a fiduciary duty to the corporation as well as to shareholders, but held: "Where the actions of a director affect the individual rights of a stockholder rather than interests of the corporation or stockholders generally, no fiduciary duty exists." *Id.* Applying *Biberstine* to this case, even if Zusy had been a shareholder of IMG, Brougher's alleged actions affected no more than plaintiff's individual rights as an employee. Brougher affected Zusy's personal employment and his plan to move to Colorado while still drawing a paycheck from IMG. Though Brougher may have misled Zusy, he did not try to mislead the corporation or the stockholders

generally. Because Brougher did not owe Zusy a fiduciary duty, the constructive fraud claim fails on the first element, without reaching the other elements.[6]

IV. *Wrongful Repudiation*

Zusy's final claim for wrongful repudiation fails for the same reason his breach of contract claim fails. He cannot establish the existence of an enforceable contract to extend his employment with IMG.

*Conclusion*

For these reasons, defendant's motion for summary judgment is granted as to all of Zusy's claims. Final judgment shall be entered accordingly.

So ordered.

Date: June 12, 2007

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

[6]For these same reasons, IMG is also entitled to summary judgment on Zusy's claim for breach of fiduciary duty inCount IV of his amended complaint.

Copies to:

Bruce D. Brattain
BRATTAIN & MINNIX
batmi5@aol.com

David A. Given
BAKER & DANIELS
dagiven@bakerd.com

Christopher C. Murray
BAKER & DANIELS
christopher.murray@bakerd.com